IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | Delaware Nation, | ) |
| (2) | Lenape Entertainment, LLC, and | ) |
| (3) | Casino Oklahoma, LLC | ) |
| | | ) |
| | Plaintiffs, | ) |
| | | ) |
| v. | | ) Case No. _____ |
| | | ) |
| (1) | Town of Hinton, Oklahoma, | ) |
| (2) | Board of Trustees of the Town of Hinton, Oklahoma, | ) |
| (3) | Hinton Public Works Authority, | ) |
| (4) | Brandon Hill, Mayor of the Town of Hinton, in his official capacity, | ) |
| (5) | Casey McLoud, Vice Mayor of the Town of Hinton, in his official capacity, | ) |
| (6) | Brian Sweany, Trustee of the Town of Hinton, in his official capacity, | ) |
| (7) | Josh Toho, Trustee of the Town of Hinton, in his official capacity, and | ) |
| (8) | Charles Basse, Trustee of the Town of Hinton, in his official capacity, | ) |
| | | ) |
| | Defendants. | ) |

## **VERIFIED COMPLAINT**

Delaware Nation, a federally recognized Indian tribe, Lenape

Entertainment, LLC, a company organized under Delaware Nation law and

wholly owned by Delaware Nation, and Casino Oklahoma, LLC, a gaming

facility organized under Delaware Nation law and wholly owned by Delaware

Nation (collectively, "Plaintiffs" or "Nation") bring this action against the

Town of Hinton, the Board of Trustees of Hinton, the Hinton Public Works Authority ("HPWA"), Brandon Hill, Mayor of Hinton (in his official capacity), Casey McLoud, Vice Mayor of Hinton (in his official capacity), Brian Sweany, Trustee of Hinton (in his official capacity), Josh Toho, Trustee of Hinton (in his official capacity), and Charles Basse, Trustee of Hinton (in his official capacity) (collectively, the "Defendants") seeking an emergency temporary restraining order, preliminary injunction, permanent injunction, and declaratory relief.

The Defendants have threatened to unilaterally terminate water and sewer utility services to land held in trust by the United States for the benefit of Delaware Nation within Hinton's town limits in violation of federal law (and of their agreement with the Nation) in an effort to extract taxes from the Nation, which federal law forbids them imposing. If such services are terminated, Delaware Nation will be forced to close one of its main economic enterprises, Casino Oklahoma, depriving it of its right to use the trust land under federal law and of significant revenue to provide services to its citizens.

## PARTIES

1.     Plaintiff Delaware Nation is a federally recognized Indian tribe. Its tribal headquarters are located at 31064 U.S. Highway 281, Building 100, Anadarko, Oklahoma 73005.

2.      Plaintiff Lenape Entertainment, LLC is a limited liability company organized under the laws of Delaware Nation, with a business address of P.O. Box 487, Anadarko, Oklahoma 73005.

3.      Plaintiff Casino Oklahoma, LLC is a gaming facility wholly owned by the Delaware Nation and operated by Plaintiff Lenape Enterprises, LLC. It is located at 220 East Cummins Road, Hinton, Oklahoma 73047, within the Town of Hinton's incorporated boundary limits.

4.      Defendant Town of Hinton is a municipality organized under Oklahoma law. Its offices are located at Town Hall, 123 East Main St., Hinton, Oklahoma 73047.

5.      Defendant Board of Trustees of the Town of Hinton is the governing body of Hinton and the Hinton Public Works Authority. Its offices are located at Town Hall, 123 East Main St., Hinton, Oklahoma 73047.

6.      Defendant Hinton Public Works Authority is a public trust organized under the laws of the State of Oklahoma and serves as the provider of water and sewer services within the Town of Hinton. Its offices are located at Town Hall, 123 East Main St., Hinton, Oklahoma 73047. The Hinton Public Works Authority is governed by the Town of Hinton Board of Trustees.

7.      Defendant Brandon Hill is the Mayor of the Town of Hinton. His offices are located at Town Hall, 123 East Main St., Hinton, Oklahoma 73047. He also serves as a Trustee on the Board of Trustees for Hinton.

8.    Defendant Casey McLoud is the Vice Mayor of the Town of Hinton. His offices are located at Town Hall, 123 East Main St., Hinton, Oklahoma 73047. He also serves as a Trustee on the Board of Trustees for Hinton.

9.    Defendant Brian Sweany is a Trustee of the Town of Hinton. His offices are located at Town Hall, 123 East Main St., Hinton, Oklahoma 73047.

10.    Defendant Josh Toho is a Trustee of the Town of Hinton. His offices are located at Town Hall, 123 East Main St., Hinton, Oklahoma 73047.

11.    Defendant Charles Basse is a Trustee of the Town of Hinton. His offices are located at Town Hall, 123 East Main St., Hinton, Oklahoma 73047.

## JURISDICTION AND VENUE

12.    The Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1362 (civil actions arising under federal law brought by federally recognized Indian tribes), and 28 U.S.C. §§ 2201, 2202 (the Declaratory Judgment Act) because the Nation asserts claims arising under the laws of the United States, including federal common law.

13.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because all parties are located within the Western District of Oklahoma and the events giving rise to the Nation's claims occurred within the District.

## STATEMENT OF FACTS

A. *Delaware Nation background*

14.    Delaware Nation is a federally recognized Indian tribe comprised of Lenape people. Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg 944, 945 (Jan. 8, 2024).

15.    The Lenape resided since time immemorial in Lenapehoking, which encompassed a region that today includes New Jersy and parts of Delaware, New York, and Pennsylvania.

16.    The Lenape was the first Indian tribe to enter a treaty with the United States: the Treaty of Fort Pitt on September 17, 1778.

17.    Due to European encroachment and colonization, the Lenape migrated west throughout many present-day states, eventually settling in Oklahoma, Wisconsin, and Ontario, Canada.

18.    Delaware Nation descends from a group of Lenape which settled in western Oklahoma in the nineteenth century. Today its headquarters is located just north of Anadarko, Oklahoma.

19.    Its jurisdictional area is the Wichita-Caddo-Delaware reservation, within which the Town of Hinton is located.

20.    Delaware Nation provides services to its approximately 2,200 citizens through economic enterprises, including gaming facilities.

*B.    Delaware Nation trust property in Hinton*

21.    In 2012, the United States took a twenty-acre parcel of land into trust for the benefit of the Delaware Nation ("Trust Parcel"), under 25 U.S.C. § 5108 (formerly 25 U.S.C. § 465).

22.    The Trust Parcel lies entirely within the Town of Hinton's incorporated boundary limits.

*C.    Casino Oklahoma in Hinton*

23.    Delaware Nation opened Casino Oklahoma in Hinton in 2012 for economic development to provide services to its citizens, including general welfare services, social services, education assistance, health services, nutrition services, utility assistance, and burial assistance.

24.    Delaware Nation conducts Class II and Class III gaming at Casino Oklahoma under the federally approved Model Oklahoma-Delaware Nation Gaming Compact, Okla. Sec'y of State, Doc. No. 41085 (Jan. 19, 2006).

25.    Revenues from Casino Oklahoma are expended under a federally approved revenue allocation plan, which requires revenues to be used for certain specified governmental programs and services.

26.    Casino Oklahoma lies within the Trust Parcel.

27.    The Town of Hinton's town limits encompass Casino Oklahoma.

28.    Because Casino Oklahoma is wholly owned by the Delaware Nation, a federally recognized Indian tribe, and because Casino Oklahoma

6

lies on land held in trust by the United States for the Delaware Nation, the Town of Hinton lacks any authority to tax Casino Oklahoma or the Trust Parcel.

## D.    *Memoranda of Understanding between Delaware Nation and Hinton*

29.    In 2012, the Nation and Hinton executed a Memorandum of Understanding ("2012 MOU").

30.    In an effort to maintain good relations with Hinton, the Nation voluntarily agreed to make certain payments in lieu of taxes to the Town in the 2012 MOU.

31.    The Nation made all payments required by the 2012 MOU.

32.    The 2012 MOU did not require any additional payments for water and sewer service other than the standard rates that apply to other businesses. 2012 MOU, 3, para. 5. ("HPWA will provide water and sewer utility services to the Lenape gaming facility at the same rate and under the same conditions as the same services are provided to others similarly situated.").

33.    The 2012 MOU prohibits the Hinton Public Works Authority from stopping water and sewer utility services to the Trust Parcel so long as the Nation pays the going rate for such services. 2012 MOU, 2, para. 5 ("HPWA agrees that, as long as Lenape pays all amounts due in connection with water and sewer utility services and the Parties are working together in

good faith, *HPWA will continue to provide water and sewer utility services to the Lenape gaming facility even after the expiration or non-renewal of this Agreement.*") (emphasis added).

34.    In the 2012 MOU, the Defendants agreed that the Trust Parcel lies within Town limits. 2012 MOU, 1, para. 1 ("The Delaware Nation owns 20 acres of trust property located *within the boundaries of the Town of Hinton.*") (emphasis added).

35.    In 2018, the Nation and Hinton executed a second Memorandum of Understanding ("2018 MOU").

36.    In its ongoing effort to maintain good relations with Hinton, the Nation voluntarily agreed to make certain payments in lieu of taxes to the Town in the 2018 MOU.

37.    The Nation made all payments required by the 2018 MOU.

38.    The 2018 MOU did not require any additional payments for water and sewer utility services other than the standard rates that apply to other businesses. 2018 MOU, 2, para. 13. ("HPWA currently provide water and sewer utility services to Casino Oklahoma at the same rate and under the same conditions as the same services are provided to others similarly situated.").

39.    The 2018 MOU prohibits the Hinton Public Works Authority from stopping water and sewer utility services to the Trust Parcel so long as

the Nation pays the going rate for such services. 2018 MOU, 2 para. 13

("HPWA agrees that, as long as Lenape pays all amounts due in connection

with water and sewer utility services and the Parties are working together in

good faith, *HPWA will continue to provide water and sewer utility services to*

Casino Oklahoma*, even after the expiration or non-renewal of this*

*Agreement*.") (emphasis added).

40.     In the 2018 MOU, the Defendants agreed that Casino Oklahoma

lies within Town limits. "[The Delaware Nation] owns 20 acres of trust

property located *within the boundaries of the Town of Hinton*." 2018 MOU, 1,

para. 1 (emphasis added).

E.     *Expiration of the 2018 MOU*

41.     In June 2023, the 2018 MOU expired.

42.     On or about May 9, 2024, the Nation informed the Defendants

that it would not renew the 2018 MOU.

43.     On or about December 6, 2024, the Defendants recognized the

sovereignty of the nation and understood that the Nation is not subject to the

laws and regulations of the Town of Hinton but agreed they "continue to

deliver water and wastewater service . . . pending further review after the

first of the year." Letter from Kimberlee Spady to Klint Cowan, 1

(Dec. 6, 2024).

*F.    Hinton's threat to terminate utility services*

44.    In June 2025, the Delaware Nation received a letter from the Hinton Public Works Authority Board of Trustees, informing the Delaware Nation that it would unilaterally terminate Casino Oklahoma's water and sewer utility services on August 1, 2025. Letter from Board of Trustees to Lenape Entertainment, LLC and Delaware Nation President Dotson (June 10, 2025).

45.    The letter implicitly demands that the Nation agree to a new MOU with Hinton that would require additional payments (taxes) to the Defendants.

46.    The letter states that Hinton:

> presented Delaware Nation and Lenape Entertainment with a proposed renewal of the Memorandum of Understanding, originally executed in 2018, for approval more than a year ago. . . . The Delaware Nation and Lenape declined to renew the agreement, advising that the Executive Committee and Lenape Entertainment had determined 'that renewal or issuance of an updated Memorandum of Understanding is an unnecessary endeavor. . . . *Given that the Delaware Nation and Lenape Entertainment have declined to enter into such an agreement,* Town of Hinton will discontinue all municipal services, including water and sewer services, to the Casino Oklahoma property at 12:00 a.m. on August 1, 2025.'"

*Id.* (emphasis added).

47. This statement makes clear that Hinton will only provide water and sewer utility services to the Trust Parcel if the Nation agrees to make additional payments (taxes) to the Town in a new MOU.

G.   *Hinton Public Works Authority policies*

48. The June 2025 letter to the Nation also states, "[t]he Town of Hinton's policies prohibit the provision of municipal services to properties *outside municipal boundaries* in the absence of a written agreement for the same." *Id*. (emphasis added).

49. The Town of Hinton/Hinton Public Works Authority Policies for Municipal Utility Services provides that "Water service will not be extended to addresses outside of Town Limits after September 20, 2016." Town of Hinton/Hinton Public Works Authority Policies for Municipal Utility Services, § I(c).

50. The Town of Hinton/Hinton Public Works Authority Polices for Municipal Wastewater Services provides that "Wastewater services will not be extended to addresses which are outside of Town Limits." Town of Hinton/Hinton Public Works Authority Polices for Municipal Wastewater Services, § I(d).

51. But the Defendants have already agreed in the 2012 MOU and in the 2018 MOU that the Trust Parcel is within the Town of Hinton's incorporated boundary limits. 2012 MOU, 1, para. 1; 2018 MOU, 1, para. 1.

52.    Google Earth also shows that the Trust Parcel lies within the Town of Hinton's incorporated boundary limits. In the image below, the redline represents the Town of Hinton incorporated boundary limits and the blue line represents the approximate boundary of the Trust Parcel. Casino Oklahoma is located within the blue boundary line on the Trust Parcel.



53.    A State of Oklahoma map of the Town of Hinton incorporated boundary line also shows that the boundary line encompasses Casino Oklahoma and the Trust Parcel. Hinton, Caddo County, Map (Okla. Dep't of Transp. and Oklahoma Transp. Auth. (2020) (attached as Exhibit 1).

H.    *Payment of utility fees for the Trust Parcel*

54.    In or about September 2012, the Nation signed a Utility Services Agreement, which is on file with the Hinton Public Works Authority for water and sewer utility services.

55.    Since opening, the Nation has paid all applicable fees for water and sewer utility services, and it intends to continue paying its fees for those services. None of the Plaintiffs have ever threatened to stop paying such water and sewer utility fees.

I.    *Impact of utility service termination*

56.    Without water and sewer utility services provided by the Hinton Public Works Authority, the Nation will have to shut down its operations on the Trust Parcel.

57.    Because the Defendants will cut off water and sewer utility services to the Trust Parcel at 12:00 a.m. on August 1, 2025, the Nation will be forced to cease operations on the Trust Parcel on that date, which will cause a drastic reduction in social services for Nation citizens who depend on this funding.

58.    Such a shutdown would also violate the Nation's right to use the Trust Parcel for economic development as a matter of federal law.

*J.    Defendants' unlawful attempt to tax the Trust Parcel*

59.    25 U.S.C. § 5108 (formerly 25 U.S.C. § 465) prohibits the

Defendants from taxing the Trust Parcel.

> Title to any lands or rights acquired pursuant to
> this Act or the Act of July 28, 1955 (69 Stat. 392),
> as amended (25 U.S.C. 608 et seq.) shall be taken
> in the name of the United States in trust for the
> Indian tribe or individual Indian for which the land
> is acquired, and *such lands or rights shall be exempt
> from State and local taxation.*

*Id.* (emphasis added).

60.    The Indian Gaming Regulatory Act also prohibits the Defendants

from taxing the Trust Parcel. Pub. L. No. 100-497, 102 Stat. 2467

(Oct. 17, 1988) (codified at 25 U.S.C. § 2710(d)(4)).

> Except for any assessments that may be agreed to
> under paragraph (3)(C)(iii) of this subsection
> [referencing Class III gaming compacts between the
> State and Nation], *nothing in this section shall be
> interpreted as conferring* upon a State *or any of its
> political subdivisions authority to impose any tax, fee,
> charge, or other assessment* upon an Indian tribe or
> upon any other person or entity authorized by an
> Indian tribe to engage in a class III activity.

61.    Federal case law uniformly rejects the ability of a state or

municipality to tax trust land or tribal economic development activities on

trust land. *See*, *e.g.*, *United States v. Rickert*, 188 U.S. 432, 441 (1903) ("no

authority exists for the state to tax lands which are held in trust"); *Warren

Trading Post Co. v. Ariz. State Tax Comm'n*, 380 U.S. 685, 691 (1965)

(holding state cannot tax income generated from on-reservation sales to Indians); *McClanahan v. State Tax Comm'n*, 411 U.S. 164, 171 (1973) (holding state cannot tax Indian's on-reservation income); *Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 458 (1995) (holding state cannot tax tribal fuel retailers in Indian country).

62.    Defendants' threat to terminate utility services constitutes an illegal attempt to obtain tax revenue, which federal law prohibits them from imposing on the Trust Parcel.

K.    *Impacts on individual Indians*

63.    Upon information and belief, trust parcels on which individual Indians live lie scattered throughout the Town of Hinton. Under the Defendants' theory that trust lands are not included within Town limits, Hinton must cut off all water and sewer utility services to those individual Indians.

64.    Of course, the Defendants will not do that because it would obviously violate equal protection and because Hinton is seeking to impose unlawful taxes on trust land containing a gaming facility, while an individual Indian residing on trust land within Hinton could unlikely afford such additional taxes.

## COUNT I
## Temporary Restraining Order and Injunctive Relief

65.     The Nation incorporates all previous paragraphs as if restated herein.

66.     A substantial case or controversy exists between the Nation and the Defendants regarding the Defendants' ability to terminate water and sewer utility services to the Trust Parcel, in an effort to force the Nation to pay taxes, in violation of federal law.

67.     The Defendants' threats to unilaterally terminate water and sewer utility services to the Trust Parcel violate federal law, the Nation's sovereignty, and the Nation's rights under federal law.

68.     The Defendants' unilateral termination of water and sewer utility services to the Trust Parcel will impair the Nation's ability to provide services to its citizens, which Congress intended tribal governments to be able to do when it passed the Indian Gaming Regulatory Act.

69.     The Nation seeks an emergency temporary restraining order, preliminary injunction, and permanent injunction.

70.     The Nation will show that it is likely to succeed on the merits because the Defendants plainly intend to violate federal law (and the Hinton Public Works Authority's own policies) by unilaterally terminating the provision of water and sewer utility services to the Trust Parcel.

71.    The Defendants admitted in both the 2012 MOU and the 2018 MOU that the Trust Parcel lies within Town limits and the Hinton Public Works Authority's policies do not allow it to terminate the provision of water or sewer services to entities within Town limits.

72.    Additionally, the water and sewer utility service provided by the Town of Hinton simply requires fees for services. The Nation pays the fee and is, therefore, entitled to receive the services. The Town of Hinton/Hinton Public Works Authority Polices for Municipal Utility Services (Sept. 21, 2016) states that "[t]he Town and HPWA (the 'Town') will endeavor to provide a safe and adequate water supply, to provide safe and sanitary sewer services, and to facility efficient and cost-effective sold waste management for *all residents of the Town of Hinton*." *Id.* (emphasis added). Similarly, the Town of Hinton/Hinton Public Works Authority Policies for Municipal Wastewater Services (Mar. 31, 2016) states that "[t]he Town and HPWA will endeavor to provide reliable, safe, and adequate wastewater services *to all residents and business within the Town of Hinton*." *Id.* (emphasis added).

73.    Irreparable harm will result to the Nation because the Defendants plan to withhold water and sewer services to the Trust Parcel until the Nation agrees to pay taxes to the Town, which infringes on the Nation's sovereignty.

74.    Irreparable harm to the Nation arises *as a matter of law* from infringements on its sovereignty. *See*, *e.g.*, *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1005 (10th Cir. 2015) ("The Tenth Circuit has repeatedly stated that . . . an invasion of tribal sovereignty can constitute irreparable injury.") (quotation omitted); *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242, 1251 (10th Cir. 2001) ("The state's refusal to extend recognition, therefore, causes an obvious harm to the tribe: interference with or infringement on tribal self-government. Protection of that right is the foundation of federal Indian law; accordingly, we conclude that the tribe has standing.") (citations omitted) (finding irreparable harm because "harm to tribal self-government [is] not easily subject to valuation but also, and perhaps more important, monetary relief might not be available to the tribe because of the state's sovereign immunity"); *N. Arapaho Tribe v. LaCounte*, 215 F. Supp. 3d 987, 1000 (D. Mont. 2016) ("The BIA has committed to no legally binding policy that would prevent such approvals from happening in the future. The prospect of allegedly unlawful approvals in the future poses irreparable harm to NAT.") (granting injunctive relief where Defendant had not committed to not taking unlawful actions against the plaintiff Tribe in the future).

75.    The threatened injury to the Nation outweighs the harm that an injunction may cause to the Defendants because the injunctive relief would

only prohibit the Defendants from acting where their actions would violate the Nation's sovereign rights and federal law. *Ute Indian Tribe*, 790 F.3d at 1007 (10th Cir. 2015) ("Instead, the temporary injunction would simply prohibit the State and County from prosecuting Ms. Jenkins and perhaps other tribal members for offenses in Indian country—*something they have no legal entitlement to do in the first place*. In this light, the defendants' claims to injury should an injunction issue shrink to all but 'the vanishing point.'") (emphasis added). Moreover, the Defendants will suffer no injury because the Nation will continue paying the fees for water and sewer utility services provided to the Trust Parcel.

76.     An injunction will not adversely affect the public interest because there is no public interest in the Defendants acting outside the scope of their authority under federal law or acting to interfere with Nation's exercise of its sovereign rights and because the Nation's right to tribal self-government itself is a matter of public interest. *Prairie Band of Potawatomi Indians*, 253 F.3d at 1253 ("this court's case law suggests that tribal self-government may be a matter of public interest").

77.     Such ongoing interference with the Nation's sovereign rights as a federally recognized Indian tribal government constitutes irreparable harm that will accrue to the Nation without injunctive relief.

78.    The injury to the Nation's sovereign governmental rights caused by the Defendants' unilateral termination of water and sewer utility services to the Trust Parcel is concrete and actual or imminent, and it is very likely that a favorable decision will redress the injury.

79.    The Nation is entitled to an emergency temporary restraining order and injunctive relief prohibiting the Defendants from interfering in the Nation's lawful exercise of its rights on the Trust Parcel.

## COUNT II
## Declaratory Judgment

80.    The Nation incorporates all previous paragraphs as if restated herein.

81.    Without declaratory relief to address this controversy, the Defendants will continue to wrongfully seek to impose taxes on the Trust Parcel in violation of federal law.

82.    Declaratory relief on this issue would settle the controversy between the Defendants and the Nation, would serve a useful purpose in clarifying the legal relations between the Defendants and the Nation with respect to the Trust Parcel, would represent the resolution of an actual dispute (not merely for the purpose of procedural fencing or providing an arena for a race to res judicata), would not increase friction between federal and state courts or improperly encroach upon state jurisdiction because the

20

Nation's rights under federal law cannot be infringed by the state, and would be more effective than any alternative remedy.

83. The Nation is entitled to a declaratory judgment that the Defendants cannot circumvent the prohibition on taxing the Trust Parcel by cutting off water and sewer utility services to the Trust Parcel in an effort to unlawfully extract taxes from the Nation.

## REQUEST FOR RELIEF

WHEREFORE, the Nation respectfully requests the following relief:

(a)    An emergency temporary restraining order prohibiting the Defendants from terminating the provision of water and sewer utility services to the Trust Parcel so long as the Nation pays generally applicable service fees for such utility services;

(b)    A preliminary injunction (and permanent injunction) prohibiting the Defendants from terminating the provision of water and sewer utilities to the Trust Parcel;

(c)    A declaration that the Defendants' threat to terminate the provision of water and sewer utility services to the Trust Parcel unless the Nation accedes to paying taxes to the Defendants, violates the Nation's sovereign rights on the Trust Parcel, 25 U.S.C. § 2710(d)(4)), 25 U.S.C. § 5108, and federal common law prohibiting the imposition of state taxes on trust lands.

(d)    Such other relief as may be appropriate whether legal or

equitable in nature; and

(e)    An award of reasonable attorneys' fees and costs.

Respectfully submitted,

LIPPES MATHIAS, LLP

_____

Klint A. Cowan, OBA No. 20187
LIPPES MATHIAS, LLP
512 NW 12th Street
Oklahoma City, OK  73103
Telephone:  (405) 204-6487
Facsimile:  (202) 888-7615
Email:        KCowan@Lippes.com

-and-

DEVOL AND ASSOCIATES, LLC

/s/ Victoria Holland
Victoria Holland, OBA No. 33197
DEVOL AND ASSOCIATES, LLC
15205 Traditions Lake Parkway
Edmond, OK 73003
Telephone:  (405) 225-2300
Facsimile:  (405) 225-2301
Email:        vholland@devollaw.com

4496412_5

22

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

Delaware Nation, et al.,              )
                                      )
          Plaintiffs,                 )
                                      )
v.                                    )        Case No. _____
                                      )
Town of Hinton, Oklahoma, et al.      )
                                      )
          Defendants.                 )

## **VERIFICATION**

State of Oklahoma                     )
                                      ) ss.
County of Caddo                       )

     Michael McLane, being duly sworn, deposes and says that I am the President of the Delaware Nation, one of the plaintiffs in the above-captioned case. I have reviewed the allegations made in the complaint and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on statements from other officials of the Delaware Nation or its wholly owned entities and I believe them to be true.

_____
Michael McLane, President
Delaware Nation

Sworn to me this 22 day of July, 2025.

_____
Notary Public



[seal]
JAYCEE JARED
Notary Public in and for the
State of Oklahoma
Commission #09004722
My Commission expires 6/04/2029