IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Delaware Nation, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 5:25-cv-00815-SLP |
| | ) | |
| Town of Hinton, Oklahoma, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**EMERGENCY MOTION FOR**
**TEMPORARY RESTRAINING ORDER**

# **Table of Contents**

BACKGROUND FACTS ................................................................... 3

ARGUMENTS AND AUTHORITIES ............................................... 9

    I.    The Defendants' threat to shut-off utilities violates
the Nation's sovereignty and federal law ........................ 9

        a.  The Defendants seek to tax the Nation by withholding
utility services from the Trust Parcel. ........................... 9

        b.  The Defendants' threat to cut off utility services unless
the Nation agrees to pay a tax creates a federal question. ......... 15

    II.   The Defendants' refusal to provide utility service without
additional payments impairs the Nation's right to use the
Trust Parcel. ................................................................... 16

    III. The Nation satisfies the elements required to obtain an
emergency temporary restraining order and preliminary
injunction. .......................................................................... 18

        a.  The verified complaint clearly shows that immediate
and irreparable harm will result to the Nation
before the adverse party can be heard in opposition. .................. 18

        b.  The threatened injury to the Nation outweighs the harm
an injunction may cause to the Defendants. ................................ 21

        c.  An injunction will not adversely affect the public interest. ........ 22

        d.  The Nation is substantially likely to succeed on the merits. ...... 22

CONCLUSION ............................................................................... 24

Table of Authorities

**Cases**

*Chase v. McMasters,*
   573 F.2d 1011 (8th Cir. 1978) .................................................................. 16, 23

*Fallon Paiute-Shoshone Tribe v. City of Fallon,*
   174 F. Supp. 2d 1088 (D. Nev. 2001) ...................................................... 17, 23

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ........................................................................................ 21

*Mashantucket Pequot Tribe v. Town of Ledyard,*
   722 F .3d 457 (2d Cir. 2013) .......................................................................... 21

*Massachusetts v. E.P.A.,*
   549 U.S. 497 (2007) ........................................................................................ 21

*McClanahan v. State Tax Comm'n,*
   411 U.S. 164 (1973) ........................................................................................ 11

*Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation,*
   425 U.S. 463 .................................................................................................... 20

*Okla. Tax Comm'n v. Chickasaw Nation,*
   515 U.S. 450 (1995) ........................................................................................ 11

*Oneida Tribe of Indians v. Vill. of Hobart,*
   732 F.3d 837 (7th Cir. 2013) .......................................................................... 11

*Prairie Band of Potawatomi Indians v. Pierce,*
   253 F.3d 1234 (10th Cir. 2001) ........................................................ 15, 19, 22

*Rincon Band of Luiseno Mission Indians of Rincon Reservation. v.
   Schwarzenegger,*
   602 F.3d 1019 (9th Cir. 2010) ........................................................................ 13

*Seneca-Cayuga Tribe of Okla. v. State of Okla. ex rel. Thompson,*
   874 F.2d 709 (10th Cir. 1989) ........................................................................ 16

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983) ........................................................................ 15

*United Keetoowah Band of Cherokee Indians v. State of Okla. ex rel. Moss*,
  927 F.2d 1170 (10th Cir. 1991) ................................................... 16

*United States v. Ballard*,
  No. 24-CV-0626-CVE-SH,
  2025 WL 1074984, at *2 (N.D. Okla. Apr. 9, 2025) ..................... 21

*United States v. Rickert*,
  188 U.S. 432 (1903) ...................................................................... 10

*Ute Indian Tribe of the Uintah & Ouray Reservation. v. Utah*,
  790 F.3d 1000 (10th Cir. 2015) .............................................. 19, 22

*Ute Indian Tribe v. Lawrence*,
  875 F.3d 539 (10th Cir. 2017) ...................................................... 15

*Warren Trading Post Co. v. Ariz. State Tax Comm'n*,
  380 U.S. 685 (1965) ...................................................................... 11

*White Mountain Apache Tribe v. Williams*,
  810 F.2d 844 (9th Cir. 1985) ........................................................ 13

*Yurok Tribe v. U.S. Bureau of Reclamation*,
  593 F. Supp. 3d 916 (N.D. Cal. 2022) ......................................... 20

**Statutes**

Fed. R. Civ. P. 65(b) ............................................................................ 1
Fed. R. Civ. P. 65(c) ............................................................................ 2
25 U.S.C. § 5108 (formerly 25 U.S.C. § 465) ................................. 9, 14
Pub. L. No. 100-497, 102 Stat. 2467 (Oct. 17, 1988)
  (codified at 25 U.S.C. § 2710(d)(4)). .......................................... 10

Plaintiffs, Delaware Nation, Lenape Entertainment, LLC, and Casino Oklahoma (collectively, "Plaintiffs", or "Nation"), request an emergency temporary restraining order prohibiting the Town of Hinton, Board of Trustees of Hinton, Hinton Public Works Authority, Brandon Hill, Mayor of Hinton, Casey McLoud, Vice Mayor of Hinton, Brian Sweany, Trustee of Hinton, Josh Toho, Trustee of Hinton, and Charles Basse, Trustee of Hinton (collectively, the "Defendants") from cutting off water and sewer utility services to Casino Oklahoma, which the Defendants have threatened to do at **12:00 a.m. on August 1, 2025**. Fed. R. Civ. P. 65(b). The Nation requests this emergency temporary restraining order to preserve the *status quo ante* and to prevent irreparable harm until a full and complete hearing on whether a preliminary and/or permanent injunction should issue halting the Defendants' plans to cut off water and sewer utility services to the Nation.

The location of the Nation's gaming facility is on a twenty-acre parcel held in trust by the United States for the Nation's benefit ("Trust Parcel"). The Trust Parcel lies entirely within the Town of Hinton's boundary.

Cutting off the water and sewer utility services to the Nation will result in an immediate closure of the Nation's Hinton gaming facility violating the Nation's sovereign right (and right under federal law) to conduct gaming on trust land within Town limits. It will also result in immediate cuts to social

services provided to the Nation's members under the Nation's federally approved Revenue Allocation Plan.

The Defendants have no compelling governmental interest in—or lawful basis for—terminating utility services to the Trust Parcel, which they have provided since at least 2012 in exchange for payments of the applicable utility fees. Indeed, the Nation signed a utility services agreement with the Town of Hinton/Hinton Public Works Authority in September 2012 and has consistently paid the required fees for water and sewer utility services. The Nation will continue paying such required fees and the Defendants have no good faith basis to believe otherwise.

Undersigned counsel certify they have provided notice of this Emergency Motion for Temporary Restraining Order to Kimberlee Spady, counsel for the Defendants, by telephone. Specifically, undersigned counsel spoke with Ms. Spady over the phone on July 22, 2025 at approximately 10:30 a.m. A copy of this motion and the accompanying documents were sent to Ms. Spady by email on July 22, 2025 at approximately 10:40 a.m.

The Nation also moves for a waiver of security required under Fed. R. Civ. P. 65(c), or for a nominal security, on the grounds that the Defendants will suffer no significant harm by being restrained from terminating water and sewer utility services to the Trust Parcel. The Defendants will continue

to receive fees for the water and sewer services because the Nation has
always paid such fees and does not intend to stop paying such fees.

## BACKGROUND FACTS

The Trust Parcel lies entirely within the Town of Hinton's incorporated
boundary. In 2012, Delaware Nation opened Casino Oklahoma on the Trust
Parcel in Hinton to enable it to provide services to its citizens, including
general welfare services, social services, education assistance, health
services, nutrition services, utility assistance, and burial assistance.
Delaware Nation conducts Class II and Class III gaming at Casino Oklahoma
under the Model Oklahoma-Delaware Nation Gaming Compact, Okla. Sec'y
of State Doc. No. 41085 (Jan. 19, 2006). Revenues from Casino Oklahoma are
expended under a federally approved revenue allocation plan, which requires
revenues to be used for certain specified governmental programs and
services. The Defendants have agreed that the Trust Parcel lies within the
boundaries of the Town of Hinton. Memorandum of Understanding between
the Town of Hinton, Hinton Public Works Authority, and Lenape
Entertainment, LLC, 1, para. 1 (June 25, 2012) ("2012 MOU") (attached as
Exhibit 1) ("The Delaware Nation owns 20 acres of trust property located
*within the boundaries of the Town of Hinton*.") (emphasis added);
Memorandum of Understanding between the Town of Hinton, Hinton Public

Works Authority, and Lenape Entertainment, LLC,  1, para. 1 (Nov. 15, 2018) ("2018 MOU") (attached as Exhibit 2) ("[The Delaware Nation] owns 20 acres of trust property located *within the boundaries of the Town of Hinton*.") (emphasis added).

Because Lenape Entertainment and Casino Oklahoma are wholly owned by the Delaware Nation, a federally recognized Indian tribe, and because Casino Oklahoma lies on land held in trust by the United States for the Delaware Nation, the Defendants lack any authority to tax Casino Oklahoma or the Trust Parcel. Yet, the Defendants are attempting to force the Nation to pay taxes on the Trust Parcel by terminating water and sewer utility service. The Defendants make this threat even though they promised in both MOUs to continue providing water and sewer services to the Trust Parcel after the MOUs' expiration. *See* 2012 MOU, 2, para. 5 (Ex. 1) ("HPWA agrees that, as long as Lenape pays all amounts due in connection with water and sewer utility services and the Parties are working together in good faith, *HPWA will continue to provide water and sewer utility services to the Lenape gaming facility even after the expiration or non-renewal of this Agreement*.") (emphasis added); 2018 MOU, 2 para. 13 (Ex. 2) ("HPWA agrees that, as long as Lenape pays all amounts due in connection with water and sewer utility services and the Parties are working together in good faith, *HPWA will*

4

*continue to provide water and sewer utility services to Casino Oklahoma, even after the expiration or non-renewal of this Agreement*.") (emphasis added).

After the 2018 MOU expired, on or about May 9, 2024, the Nation informed the Defendants that it would not renew the 2018 MOU. On or about December 6, 2024, the Defendants recognized the sovereignty of the Nation and understood that the Nation is not subject to the laws and regulations of the Town of Hinton but agreed they "continue to deliver water and wastewater service . . . pending further review after the first of the year." Letter from Kimberlee Spady to Klint Cowan (Dec. 6, 2024) (attached as Exhibit 3).

In June 2025, Delaware Nation received a letter from the Hinton Public Works Authority Board of Trustees, informing the Delaware Nation that it would unilaterally terminate Casino Oklahoma's water and sewer utility services on August 1, 2025. Letter from Board of Trustees to Lenape Entertainment, LLC and Delaware Nation President Dotson (June 10, 2025) (attached as Exhibit 4). The letter implicitly demands that the Nation agree to a new MOU with Hinton that would require additional payments (taxes) to the Defendants. The letter states that Hinton:

> presented Delaware Nation and Lenape Entertainment with a proposed renewal of the Memorandum of Understanding, originally executed in 2018, for approval more than a year ago. . . . The Delaware Nation and Lenape declined to renew the

5

> agreement, advising that the Executive Committee and Lenape Entertainment had determined "that renewal or issuance of an updated Memorandum of Understanding is an unnecessary endeavor. . . . *Given that the Delaware Nation and Lenape Entertainment have declined to enter into such an agreement,* Town of Hinton *will discontinue all municipal services, including water and sewer services, to the Casino Oklahoma property at 12:00 a.m. on August 1, 2025.*"

*Id.* (emphases added). This statement makes clear that the Defendants will only provide water and sewer utility services to the Trust Parcel if the Nation agrees to make additional payments (taxes) to the Town in a new MOU.

The June 2025 letter to the Nation also states, "[t]he Town of Hinton's policies prohibit the provision of municipal services to properties *outside municipal boundaries* in the absence of a written agreement for the same." *Id.* (Ex. 4) (emphasis added). The Town of Hinton/Hinton Public Works Authority Policies for Municipal Utility Services provides that "Water service will not be extended to addresses outside of Town Limits after September 20, 2016." Town of Hinton/Hinton Public Works Authority Policies for Municipal Utility Services, § I(c) (attached as Exhibit 5). Similarly, the Town of Hinton/Hinton Public Works Authority Polices for Municipal Wastewater Services provides that "Wastewater services will not be extended to addresses which are outside of Town Limits." Town of Hinton/Hinton Public Works Authority Polices for Municipal Wastewater Services, § I(d) (attached as Exhibit 6). But the Defendants have already agreed in the 2012

6

MOU and in the 2018 MOU that the Trust Parcel is within the Town of Hinton's incorporated boundary limits. 2012 MOU, 1, para. 1 (Ex. 1); 2018 MOU, 1, para. 1 (Ex. 2).

Further, Google Earth also shows that the Trust Parcel lies within the Town of Hinton's incorporated boundary. In the image below, the red line represents the Town of Hinton incorporated boundary and the blue line represents the approximate boundary of the Trust Parcel. Casino Oklahoma is located within the blue boundary line on the Trust Parcel.



A State of Oklahoma map of the Town of Hinton incorporated boundary line also shows that the boundary line encompasses Casino Oklahoma and the

Trust Parcel. Hinton, Caddo County, Map (Okla. Dep't of Transp. and Okla. Transp. Authority (2020) (attached as Exhibit 7).

In or about September 2012, the Nation signed a Utility Services Agreement, which is on file with the Hinton Public Works Authority for water and sewer utility services. Since opening, the Nation has paid all applicable fees for water and sewer utility services, and it intends to continue paying its fees for those services. None of the Plaintiffs have ever threatened to stop paying such water and sewer utility fees.

Without water and sewer utility services provided by the Hinton Public Works Authority, the Nation will have to shut down its operations on the Trust Parcel. Because the Defendants will cut off water and sewer utility services to the Trust Parcel at **12:00 a.m. on August 1, 2025**, the Nation will be forced to cease operations on the Trust Parcel on that date, which will cause a drastic reduction in social services for Nation citizens who depend on this funding. Such a termination would also unlawfully impair the Nation's right—under federal law—to use the Trust Parcel for economic development.

## ARGUMENTS AND AUTHORITIES

I.   **The Defendants' threat to shut-off utilities violates the Nation's sovereignty and federal law.**

   a.   The Defendants seek to tax the Nation by withholding utility services from the Trust Parcel.

The Defendants have threatened to cut off water and sewer utility services to the Nation because they want to generate revenue in addition to the utility service fees the Nation already pays. The stated reason for cutting off utilities makes this clear. The Defendants claim they are prohibited from providing water and sewer services to lands located outside the Town limits. Setting aside the fact that the Defendants have already admitted that the Trust Parcel is within Town limits, and that they have provided those very services to the Nation for many years, the Defendants' demand a new written agreement requiring the Nation to pay taxes (in addition to water and sewer utility fees) to the Town.

Federal law, 25 U.S.C. § 5108 (formerly 25 U.S.C. § 465), prohibits the Defendants from taxing the Trust Parcel.

> Title to any lands or rights acquired pursuant to this Act or the Act of July 28, 1955 (69 Stat. 392), as amended (25 U.S.C. 608 et seq.) shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and *such lands or rights shall be exempt from State and local taxation.*

9

*Id*. (emphasis added). The Indian Gaming Regulatory Act also prohibits the Defendants from taxing the Trust Parcel. Pub. L. No. 100-497, 102 Stat. 2467 (Oct. 17, 1988) (codified at 25 U.S.C. § 2710(d)(4)).

> Except for any assessments that may be agreed to under paragraph (3)(C)(iii) of this subsection [referencing Class III gaming compacts between the State and Nation], *nothing in this section shall be interpreted as conferring* upon a State *or any of its political subdivisions authority to impose any tax, fee, charge, or other assessment* upon an Indian tribe or upon any other person or entity authorized by an Indian tribe to engage in a class III activity.

*Id*. The Indian Gaming Regulatory Act plainly prohibits the Defendants from imposing any taxes, fees, charges, or other assessments on the Nation's Trust Parcel operation. Requiring the Nation to pay revenue to the Defendants in addition to the fees for utility services violates the Nation's sovereign and federal rights to conduct gaming on the Trust Parcel.

Federal common law also prevents the Defendants from imposing taxes on the Trust Parcel. The Supreme Court explained in *United States v. Rickert*, 188 U.S. 432, 441 (1903) that no authority exists for a state to tax lands held in trust. "But, as already said, *no authority exists for the state to tax lands which are held in trust* by the United States for the purpose of carrying out its policy in reference to these Indians." *Id*. (emphasis added). The Supreme Court has continued to prohibit state taxation of Indians and businesses operating in Indian country. *Warren Trading Post Co. v. Ariz.*

*State Tax Comm'n*, 380 U.S. 685, 691 (1965) (holding state cannot tax income

generated from on-reservation sales to Indians); *McClanahan v. State Tax*

*Comm'n*, 411 U.S. 164, 171 (1973) ("Indians and Indian property on an Indian

reservation are not subject to State taxation except by virtue of express

authority conferred upon the State by act of Congress") (internal quotation

omitted) (holding state cannot tax Indian's on-reservation income); *Okla. Tax*

*Comm'n v. Chickasaw Nation*, 515 U.S. 450, 458 (1995) ("we have held

unenforceable a number of state taxes whose legal incidence rested on a tribe

or on tribal members inside Indian country") (holding state cannot tax tribal

fuel retailers in Indian country).

Circuit Courts of Appeal have also rejected state taxation of Indian

tribes in Indian country. The Court of Appeals for the Seventh Circuit

explained that municipalities cannot tax tribal trust lands. *Oneida Tribe of*

*Indians v. Vill. of Hobart*, 732 F.3d 837, 838 (7th Cir. 2013) ("Tribal trust

land, in contrast, may not be taxed by either state or local governments."). In

*Oneida*, the Village of Hobart imposed an assessment for a stormwater

management system on tribal trust land within the Village limits. *Id.* at 838.

The court explained that federal law forbids states and local authorities from

taxing tribal trust properties. "So Hobart loses its case against the tribe. And

there is another reason it must lose. Because federal law forbids states and

local authorities to tax Indian lands, *the tribe can't be forced to pay the*

11

*assessment decreed by the challenged ordinance* if the assessment is a tax."

*Id*. at 841 (emphasis added).

The court went on to explain that the assessment amounted to a tax on tribal trust land because the assessment was designed to generate revenue for the Village.

> [T]he stormwater runoff assessment is a tax rather than a fee. It is designed to generate revenue to pay for a governmental project. It is not a fee for a service provided to a particular landowner. The landowners in the village are unlikely to be harmed by stormwater runoff, and therefore helped by the Village's stormwater management program. Pollution caused by the runoff would affect the streams and other bodies of water, none of them in the village so far as appears, into which the stormwater carries pollutants. Neither is the fee a penalty for the landowner's imposition of a cost on the Village; the causal relation between a particular landowner's activities and the amount of stormwater runoff pollution resulting from rainstorms in Hobart is obscure, and the assessment scheme does not assign causal responsibility for particular pollution to particular landowners. Furthermore, unpaid stormwater runoff assessments become liens on the property subject to the assessments, and are enforceable in the same manner as real property taxes—though the imposition, let alone the foreclosure, of liens on land to which the federal government holds legal title is out of the question.
>
> In its third-party complaint against the United States, the Village argues that if the Oneida tribe isn't liable to pay the assessment, the federal government is, by virtue of the waiver in section 313(a) of the Clean Air Act of its immunity from "reasonable service charges." But a tax is not a reasonable service charge;

> section 313(a) makes no reference to tribal lands; and
> the federal government is merely the holder of legal
> title to the 148 parcels in question, not the occupant.
> The government's status as trustee rather than merely
> donor of tribal lands is designed to preserve tribal
> sovereignty, not to make the federal government pay
> tribal debts. Anyway there are no tribal debts to
> Hobart.

*Id.* at 842. *See also*, *White Mountain Apache Tribe v. Williams*, 810

F.2d 844, 851 (9th Cir. 1985) ("the Tribe's exemption from state taxation of

its timber business does not implicate individual rights; rather the exemption

derives from its status as a sovereign").

In *Rincon Band of Luiseno Mission Indians of Rincon Reservation. v.*

*Schwarzenegger*, 602 F.3d 1019 (9th Cir. 2010) the court considered a state

demand for taxes from tribal gaming facilities in the form of a ten percent

payment of the tribal gaming facilities' net revenues into the state general

fund. The state's demand was similar to the Defendants' demand here that

the Nation pay a tax to the Town in exchange for providing utility services to

the Trust Parcel. The *Rincon* court rejected such demands as amounting to

unlawful state taxation of tribal gaming operations. *Id.* at 1031.

> If there is a distinction between insisting on obtaining
> a share of Rincon's income as a non-negotiable
> condition of granting it a compact, and demanding a
> tax or "refus[ing] to enter into the negotiations
> . . . based upon the lack of authority . . . to impose
> such a tax, fee, charge, or other assessment,"
> § 2170(d)(4), it is a distinction without a difference. In
> either case, the state is using its power over

> negotiations *to force Rincon to pay the State a portion of its income into the State's general fund* (and not for any use for the benefit of Rincon or other tribes) in order to engage in class III gaming. If § 2710(d)(4) means anything, it means that California cannot do that—whatever one calls it.

*Id.* at 1031 (emphasis added)

Here, the Defendants' demand for additional payments from the Nation is clearly not intended to provide a service—the Nation already pays (and will continue to pay) water and sewer utility service fees. The additional payments Hinton seeks to obtain through a renewed MOU are for the sole purpose of generating additional revenues for the Town. In short, taxes. 25 U.S.C. § 5108, the Indian Gaming Regulatory Act, and federal common law all prohibit Hinton from terminating utilities, for which the Nation pays a service fee, to extract tax revenues.

The threat also violates the Nation's sovereign right to use the Trust Parcel for economic development. If the Defendants could stop tribal economic development by refusing to provide utilities to trust land, federal law and policy promoting tribal self-determination and economic development would be severely—and unlawfully—undermined.

14

      b. The Defendants' threat to cut off utility services unless the Nation agrees to pay a tax creates a federal question.

Federal question jurisdiction exists under Section 1331 because the Defendant's inability to impose taxes on the Nation arises under 25 U.S.C. § 5108, the Indian Gaming Regulatory Act, and federal common law. By threatening to cut off utility services to the Trust Parcel unless the Nation makes additional tax payments to the Defendants, the Defendants have violated federal law and the Nation's sovereign rights. "This equitable jurisdiction under § 1331 has repeatedly been employed to police the boundaries between state and tribal authority." *Ute Indian Tribe v. Lawrence*, 875 F.3d 539, 543 (10th Cir. 2017)

"A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Id.* (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983)). *See also*, *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1237, 1240 (10th Cir. 2001) (affirming a district-court injunction forbidding Kansas authorities from enforcing state motor-vehicle-registration and titling laws against the plaintiff tribe); *United Keetoowah Band of Cherokee Indians v. State of Okla. ex rel. Moss*, 927 F.2d 1170, 1173

(10th Cir. 1991) (". . . an action such as this by a tribe asserting its immunity

from the enforcement of state laws is a controversy within § 1362 jurisdiction

as a matter arising under the Constitution, treaties or laws of the United

States."); *Seneca-Cayuga Tribe of Okla. v. State of Okla. ex rel.*

*Thompson*, 874 F.2d 709, 716–17 (10th Cir. 1989) (affirming preliminary

injunction preventing State of Oklahoma from interfering with operation of

gaming on tribal land and from proceeding with suit in state court).

    That is exactly what the Nation seeks here. It aims to obtain injunctive

relief prohibiting the Town's threats to cut off utility services unless the

Nation agrees to pay additional revenues to the State. Such actions are

prohibited by federal law.

## II.   The Defendants' refusal to provide utility service without additional payments impairs the Nation's right to use the Trust Parcel.

    In a case with similar facts, *Chase v. McMasters*, 573 F.2d 1011 (8th

Cir. 1978), the city of New Town, North Dakota refused to connect a trust

parcel to city utilities. The Indian landowner sued the city claiming the right

to use her trust parcel without paying local taxes in addition to the routine

connection fee and subsequent service charges (which she was willing to pay).

The court found that New Town's actions deprived the Indian landowner of

her right to use the trust property exempt from taxation under 25 U.S.C.

§ 465 (now 25 U.S.C. § 5108) and, therefore, violated the Supremacy Clause.

> At the time § 465 was enacted, judicial decisions had established that lands held in trust by the United States for Indians were exempt from local taxation as federal instrumentalities, and that federal jurisdiction over tribal trust lands was exclusive and precluded assertion of state or local control. When Congress provided in § 465 for the legal condition in which land acquired for Indians would be held, it doubtless intended and understood that the Indians for whom the land was acquired *would be able to use the land free from state or local regulation or interference as well as free from taxation*.

> New Town's action clearly interferred [sic.] with Chase's beneficial use of the land. Although Chase *was willing to pay the connection charge and service fees and had paid the special assessment charges*, the only means by which she could obtain city water and sewer service necessary to use the land for residential purposes was to remove the land from trust status *or voluntarily pay taxes*.

> . . .

> [W]e hold that New Town impermissively impaired and burdened a right granted under federal law to a tribal Indian. *Such an action is precluded by virtue of the Supremacy Clause.*

*Id*. at 1018 (emphases added) (citations omitted).

Similarly, in *Fallon Paiute-Shoshone Tribe v. City of Fallon*, 174 F.

Supp. 2d 1088 (D. Nev. 2001), the City of Fallon, Nevada, refused to connect a

trust parcel within city limits to city utilities unless and until the land was removed from trust.

> [T]he Tribe *has a federal right to have its land held in trust* and the City of Fallon's denial of sewer services *interferes with the tribe's right to enjoy the beneficial use of land held in trust.* The City's refusal to provide sewer services due to the trust status of the land *interferes with the operation of an important means of implementing a policy adopted by the federal government to meet its trust obligations to Indian Tribes.*

*Id.* at 1093 (internal quotations omitted) (emphases added).

These cases demonstrate that municipalities and municipal public works authorities, such as the Defendants, cannot deprive an Indian or an Indian tribe of its right to use trust land by demanding payments beyond the standard and generally applicable service fees paid by every other landowner.

## III.    The Nation satisfies the elements required to obtain an emergency temporary restraining order and preliminary injunction.

   a. The verified complaint clearly shows that immediate and irreparable harm will result to the Nation before the adverse party can be heard in opposition.

The Nation will suffer irreparable harm without a temporary restraining order because the Defendants have made it clear that they will terminate water and sewer services to the Nation without an additional unlawful tax being paid by the Nation to the Defendants. The Defendants'

18

threatened action violates the Nation's sovereign rights and rights under federal law to use the Trust Parcel for economic development without paying municipal taxes to the Defendants. The Defendants will force the Nation to close its gaming facility on the Trust Parcel at **12:00 a.m. on August 1, 2025**, unless the Nation agrees to pay an unlawful tax.

Irreparable harm will result to the Nation because the Defendants plan to interfere with the Nation's governmental authority to operate a gaming facility on trust land within the Town limits unless the Nation agrees to pay additional revenues to the Defendants, which they cannot impose and cannot collect as a matter of federal law. Irreparable harm to the Nation arises as a matter of law from infringements on its sovereignty. *See, e.g.*, *Ute Indian Tribe of the Uintah & Ouray Reservation. v. Utah*, 790 F.3d 1000, 1005 (10th Cir. 2015) ("The Tenth Circuit has repeatedly stated that . . . an invasion of tribal sovereignty can constitute irreparable injury.") (quotation omitted); *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242, 1251 (10th Cir. 2001) ("The state's refusal to extend recognition, therefore, causes an obvious harm to the tribe: interference with or infringement on tribal self-government. Protection of that right is the foundation of federal Indian law; accordingly, we conclude that the tribe has standing.") (citations omitted) (finding irreparable harm because "harm to tribal self-government [is] not easily subject to valuation but also, and perhaps more important, monetary

relief might not be available to the tribe because of the state's sovereign immunity"); *N. Arapaho Tribe v. LaCounte*, 215 F. Supp. 3d 987, 1000 (D. Mont. 2016) ("The BIA has committed to no legally binding policy that would prevent such approvals from happening in the future. The prospect of allegedly unlawful approvals in the future poses irreparable harm to NAT.") (granting injunctive relief where Defendant had not committed to not taking future unlawful actions against the plaintiff Tribe).

A long line of authority holds that breaches of tribal sovereignty constitute irreparable harm. Such infringement harms the "substantive interest which Congress has sought to protect [in] tribal self-government." *Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation,* 425 U.S. 463, 469 n.7 (1976) (holding tribe had a "discrete claim of injury" with respect to state taxation of tribal members on the reservation "so as to confer standing upon it"; finding "[s]ince *the substantive interest which Congress has sought to protect is tribal self-government,* such a conclusion is quite consistent with other doctrines of standing") (emphases added); *Yurok Tribe v. U.S. Bureau of Reclamation,* 593 F. Supp. 3d 916, 928 (N.D. Cal. 2022) ("The allegation that the OWRD Order amounts to *an affront on the Yurok Tribe's* water rights and thus, *its sovereignty,* is sufficient to constitute an injury for the purposes of standing.") (emphases added); *Mashantucket Pequot Tribe v. Town of Ledyard,* 722 F .3d 457, 463

20

(2d Cir. 2013) (finding tribe had standing to seek declaratory and injunctive relief against state acts that infringed its tribal sovereignty). "The Tribe argues . . . that it has suffered an injury-in fact because the tax *infringes upon Tribal sovereignty. We agree that the Tribe's allegations are sufficient to confer standing." Id.* (emphases added). Further, "tribes, like states, are afforded *'special solicitude in our standing analysis.'" Id.* (quoting *Massachusetts v. E.P.A.,* 549 U.S. 497, 520 (2007)) (emphasis added); *see also United States v. Ballard,* No. 24-CV-0626-CVE-SH, 2025 WL 1074984, at *2 (N.D. Okla. Apr. 9, 2025) ("Indian tribes, like states and other governmental entities, have standing to sue to protect sovereign interests."). In cases challenging government action, "there is ordinarily little question that the action . . . has caused [the plaintiff] injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561–62 (1992).

The Nation is entitled to an emergency temporary restraining order prohibiting the Defendants from terminating water and sewer services to the Trust Parcel.

> b. The threatened injury to the Nation outweighs the harm an injunction may cause to the Defendants.

The threatened injury to the Nation outweighs the harm that an injunction may cause to the Defendants because the injunctive relief would

only prohibit the Defendants from acting where their actions would violate
the Nation's sovereign rights and federal law. *Ute Indian Tribe*, 790 F.3d
at 1007 ("Instead, the temporary injunction would simply prohibit the State
and County from prosecuting Ms. Jenkins and perhaps other tribal members
for offenses in Indian country—something they have no legal entitlement to
do in the first place. In this light, the defendants' claims to injury should an
injunction issue shrink to all but 'the vanishing point.'") (emphasis added).

     c. An injunction will not adversely affect the public interest.

An injunction will not adversely affect the public interest because there
is no public interest in the Defendants acting outside the scope of their
authority under federal law or acting to interfere with Nation's exercise of its
sovereign rights on the Trust Parcel and because the Nation's right to tribal
self-government itself is a matter of public interest. *Pierce*, 253 F.3d at 1253
("this court's case law suggests that tribal self-government may be a matter
of public interest").

     d. The Nation is substantially likely to succeed on the merits.

The facts described in the Verified Complaint demonstrate that the
Defendants seek to impose unlawful taxes on the Trust Parcel and on the
Nation. The facts also demonstrate that the Defendants seek to infringe on
the rights of the Nation to use the Trust Parcel for economic development as

it is authorized to do under the Indian Gaming Regulatory Act and the federally approved gaming compact. Indeed, the Defendants' own letter to the Nation demonstrates that the Defendants will terminate water and sewer utility service to the Trust Parcel at 12:00 a.m. on August 1, 2025 unless the Nation signs a new Memorandum of Understanding promising to pay revenues to the Defendants above and beyond the generally applicable service fees. Federal law prohibits municipalities from refusing to provide utilities to trust land in exchange for payments beyond generally applicable service fees. *Fallon Paiute-Shoshone Tribe*, 174 F. Supp. 2d at 1093 ("[T]he Tribe *has a federal right to have its land held in trust* and the City of Fallon's denial of sewer services *interferes with the tribe's right to enjoy the beneficial use of land held in trust*.) (emphases added); *Chase*, 573 F.2d at 1018 ("New Town's action clearly interferred [sic.] with Chase's beneficial use of the land. Although Chase *was willing to pay the connection charge and service fees and had paid the special assessment charges*, the only means by which she could obtain city water and sewer service necessary to use the land for residential purposes was to remove the land from trust status *or voluntarily pay taxes*".) (emphases added). The Nation is likely to succeed on the merits and is entitled to an emergency temporary restraining order and preliminary injunctive relief.

23

## CONCLUSION

For the foregoing reasons, the Nation is entitled to an emergency temporary restraining order and preliminary injunction prohibiting the Defendants from terminating the water and sewer utility services to the Trust Parcel so long as the Nation pays the generally applicable service fees for such utility services.

Respectfully submitted,

LIPPES MATHIAS, LLP

/s/ Klint A. Cowan
Klint A. Cowan, OBA No. 20187
LIPPES MATHIAS, LLP
512 NW 12th Street
Oklahoma City, OK  73103
Telephone: (405) 204-6487
Facsimile:  (202) 888-7615
Email:  KCowan@Lippes.com

-and-

DEVOL AND ASSOCIATES, LLC

/s/ Victoria Holland
Victoria Holland, OBA No. 33197
DEVOL AND ASSOCIATES, LLC
15205 Traditions Lake Parkway
Edmond, OK  73003
Telephone:  (405) 225-2300
Facsimile:  (405) 225-2301
Email: vholland@devollaw.com

4521777

24